|       |       |
| ----- | ----- |
| 112   | 463   |
| 112   | ³455  |
| 112   | 463   |
| a210s | 226   |
| 112   | 463   |
| 115   | ⁴625  |
| e115  | 627   |
| 115   | ⁴628  |

## Illinois Terminal Railroad Company v. David R. Thompson.

1. RAILROAD PREMISES—*how far non-ownership of, affects the duty of occupant.* Where a railroad company is in possession of a switching yard and its appurtenances for the purpose of there conducting and carrying on its business, its duty with respect to the condition and safety thereof is the same as though it owned the yard and appurtenances in fee.

2. VARIANCE—*when and how objection for, should be made.* A variance must be specifically objected to in the trial court in order to avail on appeal.

3. ASSUMED RISK—*doctrine of, in general.* An employee is presumed to assume certain risks from the acceptance of his employment. In general, such risks are those incident to the service for which he is engaged; hazards from defective machinery, appliances and facilities, though not ordinary and incidental, may nevertheless come within the rule if known to the employee and he afterwards voluntarily continues in the employment. To bar an action on the ground of assumed risk, it must appear that the injury was incidental to the business and not by reason of defendant's negligence. Nor does the doctrine of assumed risk involve the question of ordinary care or contributory negligence.

4. ASSUMED RISK—*what not.* Held, in this case, that the danger arising from a telegraph pole being permitted to remain in close proximity to a switching track, was not an assumed risk.

5. ORDINARY CARE—*how question of, considered.* In considering the question as to whether the plaintiff was in the exercise of ordinary care for his own safety, the respective duties of the parties, plaintiff and defendant, must be kept in mind.

6. SWITCHING YARD—*duty of railroad company with respect to.* A railroad company owes to its employees the duty to provide and maintain its tracks, switches and grounds in a safe and suitable condition for conducting the business in which its servants are engaged and to use every precaution which a reasonably prudent man would exercise

under like circumstances, and not to expose such servants in the discharge of their duties to perils and dangers against which it could guard by the exercise of reasonable care.

7. SERVANT—*right of, to presume performance of duty by master.* A servant has the right to presume that reasonable care has been exercised for his safety in the work required of him.

8. RECOVERY—*when, may be predicated upon any count of the declaration.* The plaintiff is entitled to recover upon proof of any count of the declaration where the defendant has pleaded thereto, has gone to trial upon the issue so made, and has not asked the court to limit the plaintiff's right of recovery to any count or counts.

Action on the case for personal injuries. Appeal from the Circuit Court of Madison County; the Hon. PAUL MCWILLIAMS, Judge, presiding. Heard in this court at the August term, 1903. Affirmed. Opinion filed March 10, 1904.

TRAVOUS, WARNOCK & BURROUGHS and HENRY S. BAKER, for appellant.

JOHN J. BRENHOLT, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action on the case for damages brought by plaintiff, David R. Thompson, against the Illinois Terminal Railroad Company, defendant, in the Circuit Court of Madison County. The trial resulted in a verdict of $8,875 for plaintiff, to which there was a remittitur of $2,875. A motion by the defendant for a new trial was overruled and judgment on the verdict for $6,000 was entered, from which the defendant appealed.

At the close of the plaintiff's evidence and again at the close of all the evidence, the defendant moved the court for a peremptory instruction to the jury to find the defendant not guilty. Motion was denied, and the instruction refused. Exceptions were preserved. Numerous errors are assigned and will be considered so far as directed by argument of appellant.

The appellant is a corporation engaged in a general switching business in and about Alton, making up trains, moving cars and delivering the same to the various connections required. From the evidence it appears that its

·switching yards, the field of its operation, at the time of the injury complained of, included what is here known and referred to as Illinois Glass Company Yard. Within the Glass Company yard, entering it from the east, are two tracks lying parallel, one to the south known as the "scale track," and the other as the "house track." From the south rail of the house track to the north rail of the scale track the distance is eight feet six inches. Midway between the tracks was a line of telegraph or telephone poles, which stood in elevation ten or twelve feet above the top of the cars when passing. North of the house track and parallel with it was a building or shed, called the batch house, 159½ feet in length, the roof of which stood within six and one-half inches of passing cars. On the 8th day of February, 1902, the plaintiff, an employee of defendant, was engaged with a switching crew in moving a train of cars west from the warehouse, which is two or three hundred feet east of the point where the injury occurred. To reach the top of the moving cars and let off the brakes, he caught and was climbing the ladder on the side near the rear end of the forward car, and when near the top, came in contact with one of the telegraph poles which stood between the tracks as stated, lost his hold, fell to the ground and was injured.

There is evidence that the distance between this pole and the car, near the bottom, was seventeen and one-half inches, and at the top fifteen and one-fourth inches, and that the cornice or roof of the car extends out three or four inches, so that the space between the pole and the roof of the car was about fourteen inches. The cars were moving west on the house track, and plaintiff was between the tracks thirty or forty feet east of the pole when he started to climb the ladder. He had reached the top and was in the act of stepping on the car when struck. This occurred about five o'clock in the evening. It was snowing and smoke from the glass factory somewhat obscured the view. The tracks were straight and parallel, with no obstacles of any kind between the plaintiff and the pole at the time he mounted the ladder. The top of the car could be reached at that

point only by means of the ladder on the south side, the proximity of the batch house roof on the opposite side preventing the use of the ladders on that side of the car.

The defendant is charged with negligence in erecting or permitting—" had or had permitted " is the language of the declaration—a telegraph pole so near the track as to endanger employees while in the performance of their duty in operating the cars and trains for the defendant. The general issue being filed, the questions of fact under the pleadings are : (1) Was the defendant guilty of negligence as charged in the declaration ? (2) Was the plaintiff in the exercise of ordinary care for his own safety prior to and at the time the injury was received ? . (3) Was the injury within the ordinary and incidental hazard assumed by the plaintiff in his employment ? The verdict is a conclusive answer to all these questions, unless there is error in the record to justify the court in setting it aside.

The first point urged by appellant is, that there is no evidence of the negligence charged, viz.: that the defendant " had or had permitted to be erected on the south side of its main switch track in its said switch yard  *  *  *  a certain pole, which pole was not placed at a sufficient distance from defendant's said main switch track in said switch yard, and trains passing thereon, so that persons operating thereon could safely perform their duties, etc." Whether the switching yard in which the plaintiff was injured was the property of the defendant is not a material, certainly not a controlling question in this case. The defendant was in possession for the purpose and operation of its business in switching cars and, presumably, it was there by legal right and authority. Whether it was the owner in fee or merely an occupant by lease or license, its duty and liability would be the same. If in fact the yard, tracks and poles belonged to the Illinois Glass Company, it may reasonably be inferred that the defendant was under contractual relations with that company in the use of the yard, and if by contract the Glass Company had control of the construction, repairs, and general supervision and control of the yard and

Illinois Terminal R. R. Co. v. Thompson.

appurtenances, and of its own motion and right put up the pole in controversy, the defendant would not thereby be relieved of any duty which it owed to the plaintiff. The plaintiff was in its employ, and about its business in the place and with the means and facilities provided by the defendant. It was proved that the pole had been in the same place for a long time, four or five years, and there is testimony that Mr. Ferguson, at present manager of defendant company, was present and saw it placed. At that time defendant was not using this yard and may not be chargeable with having placed the pole in the first instance, but for nearly three years prior to the injury defendant had been in the constant use and occupation of the yard and tracks. At least there is evidence tending to prove that the defendant knowingly *permitted* the pole in dangerous proximity to the track. This is substantially the negligence charged and clearly the purport of the language and intention of the pleader in the allegation " had or had permitted to be erected." At most it may be treated as a variance merely, readily cured by amendment in the form of the averment, and to avail the appellant now, specific objection should have been made in the court below. Wright Fire Proofing Co. v. Pozekai, 130 Ill. 139; C., R. I. & P. Ry. Co. v. Clough, 134 Ill. 586; T. M. Life Ins. Co. v. Johnson, 200 Ill. 359; C. & G. T. Ry. Co. v. Spurney, 197 Ill. 471; M. Life Ass'n v. Wells, 200 Ill. 445; Joliet v. Adler Extr., 71 App. 456; Fox v. Starr, 106 App. 273.

The doctrine of assumed risk is invoked by the appellant in bar of plaintiff's right to recover in this case. In general, an employee is held to assume the risks incidental to the service for which he is engaged. That arises out of contract and is presumed from his acceptance of employment. Hazard from defective machinery, appliances and facilities, though not ordinary and incidental, may, nevertheless, come within the rule if known to the employee and he afterwards voluntarily continues in the employment. To bar the action on the ground of assumed risk, it must appear that the injury was incidental to the business and

not by reason of defendant's negligence. Nor does the doctrine of assumed risk involve the question of ordinary care or contributory negligence. C. & E. I. R. R. Co. v. Heerey, Admr., 203 Ill. 492. The inquiry is not as to the conduct of the parties, employer and employee, one toward the other, but as to the contractual relationship between them, whereby the master is relieved of liability. In this case the proximity of the telegraph pole to the track was a highly dangerous obstruction. Injury to an employee engaged as was the plaintiff might reasonably have been expected. It is remarkable that others escaped for so long a time. Under the evidence it may have been possible for one on the ladder at the lower end and standing flat against the car to pass the pole uninjured, but that was not the natural or usual position of the body in ascending the ladder. It may not be contended that the danger from this obstruction was incidental to the business and a risk assumed by the plaintiff, unless it is shown by the evidence that the plaintiff knew and understood the danger to which he was exposed. Whether he had such knowledge and as a consequence whether he assumed the risk, was a question of fact which the jury found adversely to the defendant. If the plaintiff was forewarned of the danger or from the evidence may be held to have known it, and by continuing in service assumed the risk, the question of whether or not he was in the exercise of ordinary care is immaterial. Care or negligence on his part or that of the defendant would not affect the rights of either party to this action. If the plaintiff assumed the risk within which he suffered, the defendant is not liable. It is the verdict of the jury under the evidence in this case that plaintiff did not assume the risk.

The question of ordinary care or contributory negligence was, likewise, one of fact for the jury to determine from all the evidence and circumstances in the case. In seeking to recover damages for injuries caused by the negligence of the defendant, the plaintiff was required to prove that he was in the exercise of ordinary care for his own safety at

the time and prior to the injury, and that his own negligence was in no manner a contributory cause. In considering this branch of the case, the respective duties of the parties, plaintiff and defendant, must be kept in mind. The duties and obligations growing out of the relationship of employer and employee, master and servant, are mutual and reciprocal. It was the duty of the defendant to provide and maintain its tracks, switches and grounds in a safe and suitable condition for conducting the business in which the plaintiff was engaged, and to use every precaution which a reasonably prudent man would exercise under like circumstances, and not to expose the plaintiff, in the discharge of his duty, to perils and dangers against which the defendant could guard by the exercise of reasonable care. Pullman Palace Car Co. v. Laack, 143 Ill. 242; Armour v. Golkowska, 202 Ill. 144; Swift & Co. v. Ronasa, 103 App. 475. It was the duty of the plaintiff to perform the service required of him in the line of his employment. Each had the right to assume that the other would exercise ordinary care as respects his duty. The plaintiff had a right to presume that reasonable care had been used for his safety in the work required of him, and could not be held to watchfulness and precautions as to danger due to the negligence of the defendant, and of which he had no knowledge. Himrod Coal Co. v. Clark, 197 Ill. 514; C. & E. I. R. R. Co. v. Huff, 104 App. 594. If the proximity of the telegraph pole to the track was a dangerous obstruction, and of this there can be no question, it was not an ordinary or incidental danger to be anticipated or looked for unless the plaintiff had prior knowledge, in which case, as before stated, he would have assumed the risk and could not recover. If the laying of the tracks and placing of telegraph poles were in the line of his duty, he would be held to ordinary care in seeing that they were properly placed and would not be heard to complain of injury to which his own neglect of duty contributed. The plaintiff in this case was a brakeman and in the performance of his duty as such when injured, and the ordinary care required of him by

the law was no more than would be exercised by a reasonably prudent and careful person under like circumstances and in like employment. It has been held, C. & E. I. R. R. Co. v. Driscoll, 176 Ill. 330, "The manner of constructing a railroad is an engineering question. A railroad company cannot be required to adopt any particular method of construction. * * * Public policy does not require courts to lay down any rule as to the manner of construction of railroads. * * * It is not a question for a court to submit to a jury, whether the manner of the construction of a railroad is proper or not." That doctrine is without application in this case. In the Driscoll case and, in St. L. N. S. Y. Co. v. Burns, 97 App. 178, cited in argument, it was held, in the first, that a butt-post at the end of a stub-switch, and in the other, that the location and proximity of tracks, was an engineering question within the meaning of the doctrine, and that negligence and liability to an employee may not be predicated upon the construction of a railroad in these respects. But we have seen no decision that telegraph poles along the track or in the yards, and their proximity to passing trains, may be regarded as part of the railroad construction not to be considered under a charge of negligence. In reason, and under abundant authority in this state, such contention is without support. To this view this court is committed by the case of C. & A. R. R. Co. v. Howell, 109 App. 546, affirmed by the Supreme Court in opinion not yet reported. See also C. & I. R. R. Co. v. Russell, 91 Ill. 296; C. & A. R. R. Co. v. Stevens, 189 Ill. 226; I. C. R. R. Co. v. Welch, 52 Ill. 183.

We find no error in the giving or refusing of instructions. The first of appellee's given instructions has been approved in numerous decisions of the Supreme and Appellate Courts. The defendant having pleaded to the declaration and gone to trial on the issues made, with no instruction to limit plaintiff's right to a particular count, offered or refused, the plaintiff was entitled to recover upon proof of any count of the declaration, and it may not now be contended that the plaintiff should have so limited his right by an

East St. Louis Connecting Ry. Co. v. Altgen.

instruction. The second and third of appellee's given instructions, when considered together, correctly state the law as to the damages that may be assessed and the elements which may be considered by the jury. The first of appellant's refused instructions is clearly erroneous. The jury are told that if the plaintiff "knew or could have known said dangerous condition and remained in the employ of said company," etc., he could not recover. This is not the law. At most, the plaintiff could only be held to the knowledge attainable by the exercise of *ordinary care*. Besides, there is no evidence that the pole in question was "necessarily required in the yards at the time of the accident." It was properly refused. The second refused instruction imposed upon the plaintiff the duty to investigate and inspect conditions as to relative position of the pole and the track, and held him to the knowledge that might have been thus acquired. Such is the purport of the instruction. This he was not bound to do as we view the law and have discussed it under the contention of assumed risk.

Finding no prejudicial error in the record, the judgment of the Circuit Court will be affirmed.

*Affirmed.*